```
                   UNITED STATES DISTRICT COURT

                     DISTRICT OF CONNECTICUT

EARL OSBORN,                      :
     Plaintiff,                   :
                                  :
     v.                           :  Case No. 3:19-cv-1176(AWT)
                                  :
CAPTAIN BLACK, ET AL.,            :
     Defendants.                  :
```

**RULING ON MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Earl Osborn ("Osborn"), is currently incarcerated at Garner Correctional Institution in Newtown, Connecticut. He initiated this action by filing a civil rights complaint pro se pursuant to 42 U.S.C. § 1983 against Captains Black, Walsh and Ruben Burgos, Lieutenants Rivera and Scagliarini, Correctional Counselor Vann, Correctional Cadet Garcia and Correctional Officers Scootter, Smith, Lahda, Barbuto, Getchel and Lapointe. The claims in the complaint arise from the defendants' alleged 1) failure to protect the plaintiff from assault by his cellmate, 2) failure to intervene, and 3) deliberate indifference to health and safety, in violation of the Eighth Amendment of the United States Constitution and Article First, § 9 of the Connecticut Constitution.

On November 12, 2019, the court declined to exercise supplemental jurisdiction over the state constitutional claim.

See Initial Review Order, ECF No. 10, at 11, 13[1]. The Eighth Amendment failure to protect claim proceeded against Captains Black, Walsh, and Burgos, Counselor Vann and Officer Scooter in their individual capacities. See id. at 7-8, 13. The Eighth Amendment failure to intervene claim proceeded against Cadet Garcia and Officer Smith in their individual capacities. See id. at 9, 13. The Eighth Amendment deliberate indifference to health and safety claim proceeded against Lieutenants Scagliarini and Rivera and Officers Lahda, Barbuto, Getchel and Lapointe in their individual capacities. See id. at 10, 13.

The defendants have moved for summary judgment. The plaintiff did not respond. For the reasons set forth below, the motion is being granted.

I.  **LEGAL STANDARD**

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A non-moving party's failure to oppose a motion for summary judgment does not, by itself, justify the

---

[1] Pincites for documents on the electronic docket refer to the page number assigned by the electronic docket, not the page number assigned

granting of the motion. Where the non-moving party "chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001). If the evidence submitted in support of the summary judgment motion does not meet the movant's initial burden, "summary judgment must be denied even if no opposing evidentiary matter is presented." Id. (internal quotation marks omitted); see also Giannullo v. City of N.Y., 322 F.3d 139, 141 (2d Cir. 2003) (the "non-movant is not required to rebut an insufficient showing"). However, Federal Rule of Civil Procedure 56(e) provides that if a party "fails to properly address another party's assertion of fact as required by Rule 56(c)," the court may, inter alia, "consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it."

When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury.

---

by the filer.

3

See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)(quoting Del. & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)). However, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F. 3d 241, 244 (2d Cir. 2004). The asserted facts "must reference admissible evidence . . . in the record tending to prove each such fact, e.g., deposition testimony, admissions, answers to interrogatories, affidavits, etc." Jackson v. Fed. Express., 766 F.3d 189, 194 (2d Cir. 2014).

    The court has reviewed the evidence submitted by the defendants. Because no opposition to the defendants' motion has been filed and the evidence tends to prove them, the court considers the facts asserted in their Rule 56 Statement of Facts admitted. See Fed. R. Civ. P. 56(e)(2).

## II. FACTS

The relevant facts are taken from Defendants' Local Rule 56(a)1 Statement (ECF No. 43-2), and Exhibits A through K (ECF Nos. 43-4 to 43-13 and 44), filed in support of the Local Rule 56(a)1 Statement. Osborn has not filed a Local Rule 56(a)2 Statement.

Local Rule 56(a)2 requires the party opposing a motion for summary judgment to file a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the paragraphs in the moving party's Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. See Local Rule 56(a)2(i). "[E]ach denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial." Local Rule 56(a)3. The defendants notified Osborn of his obligations with respect to responding to the motion for summary judgment. See Notice to Self-Represented Litigant, ECF No. 43-3.

Because Osborn has not filed a Local Rule 56(a)2 Statement in opposition to the Defendants' Local Rule 56(a)1 Statement, the facts asserted in Defendants' Local Rule 56(a)1 Statement that have evidentiary support are deemed admitted. See Local

5

Rule 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule. . . .").

On February 21, 2019 and for some time prior, Osborn was housed at MacDougall-Walker Correctional Institution ("MWCI"). On February 21, 2019, Osborn was involved in an altercation with his cellmate, Gregory Jetter. In his complaint, Osborn alleges that "[f]or several months prior to February 21, 2019, Jetter engaged in a pattern of harassing and threatening conduct towards Osborn . . . ." Compl., ECF No. 1, ¶ 17. He also alleges that "[o]n February 21, 2019, Jetter attacked Osborn with a pencil attempting to inflict serious physical injury on Osborn." Id. at ¶ 24. Both Osborn and Jetter received disciplinary action for fighting.

On that date, just prior to the altercation, Officer Garcia was handing out mail in the unit where Osborn and Jetter were housed. When Officer Garcia approached the cell where Osborn and Jetter were housed, he was reading their names to confirm delivery of their mail. When Officer Garcia looked into the cell, he believed Jetter and Osborn were engaged in horseplay.

6

Officer Garcia did not open the cell door or enter the cell and separate Osborn and Jetter because he believed that to do so would have been unsafe and contrary to policy and procedure. Officer Garcia immediately called for Officer Smith, who was standing in the lower level of the unit, to respond, and Officer Smith arrived within seconds. Officer Smith called a code to which more staff members responded. Officer Garcia was not involved in securing or transporting Osborn or Jetter after the incident. Defendants Black, Walsh, Burgos, and Vann were not involved in the incident. On March 19, 2019, Osborn was transferred to Garner Correctional Institution.

Prior to February 21, 2019, Defendants Black, Walsh, Burgos, and Vann were not informed of and did not receive any correspondence regarding sexual assault of Osborn by Jetter or regarding a threat to Osborn's safety by Jetter. There is no documentation of any threat to or sexual assault of Osborn by Jetter. The DOC Prison Rape Elimination Act ("PREA") Unit, which investigates allegations of sexual abuse or harassment between inmates, did not receive any complaint or expression of concern from Osborn regarding Jetter prior to the February 21, 2019 incident.

On September 28, 2018, and December 19, 2018, Osborn's mental health provider wrote that Osborn "denie[d] . . . issues

7

with peers." Defs.' Mem., Ex. H, Excerpted Medical Records, ECF No. 44, at 3, 7. On September 5, 2018, Osborn's mental health provider wrote that the plaintiff had "[n]o issues on the block." Id. at 6.

Osborn did not file any Level 1 grievance between February 21, 2019 and March 23, 2019.

On March 29, 2019, Osborn filed an appeal of disciplinary action he received for fighting during the incident on February 21, 2019. See Defs.' Mem., Ex. I, Attachment 1, ECF No. 43-11 at 8. Osborn refiled this appeal on April 1, 2019. See id. at 22-23. Although untimely, it was ultimately considered on the merits and denied on April 24, 2019. See id. at 24. It appears that Osborn also filed appeals of disciplinary action on April 2 and April 5, 2019.

On April 4, 2019 and again on April 8, 2019, Osborn filed grievances with respect to the February 21, 2019 incident. But in each instance, the grievance was returned without disposition. On April 4, 2019, Osborn was informed that he had failed to state his grievance "simply and coherently." Id. at 9. On April 8, 2019, Osborn was informed that he had not attached an Inmate Request Form or explained why one was not attached and also that he had failed to state his grievance "simply and coherently." See id. at 12.

8

Osborn filed a grievance dated April 16, 2019 with respect to the incident on February 21, 2019; the form reflects that the grievance was received on April 23, 2019. See id. at 17. In any event, it was rejected on May 2, 2019 as untimely. See id. On May 8, 2019, Osborn appealed this disposition. See id. at 20. His appeal was rejected on May 30, 2019 because his grievance was filed "far beyond 30 calendar days" after the February 21, 2019 incident. Id. at 20.

### III.   DISCUSSION

The defendants make three arguments in support of their motion for summary judgment: (1) Osborn did not exhaust his available administrative remedies as to any of his claims; (2) Osborn's failure to protect claims fail as a matter of law; and (3) Osborn's failure to intervene claim against Officer Garcia fails as a matter of law. Because the court is granting the motion for summary judgment on the ground that Osborn did not exhaust his available administrative remedies as to any of his claims prior to filing this action, it unnecessary to address the additional arguments.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), requires a prisoner to exhaust "administrative remedies as are available" before bringing an "action ... with respect to prison conditions." The Supreme Court has held that

"the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," Porter v. Nussle, 534 U.S. 516, 532 (2002), "regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001).

The PLRA requires "proper exhaustion", which includes complying with all "procedural rules" including filing deadlines, as defined by the particular prison grievance system. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). Thus, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement." Ruggiero v. County of Orange, 467 F.3d 170, 176 (2d Cir. 2006) (quoting Woodford, 548 U.S. at 83-84). In Ross v. Blake, the Supreme Court rejected judicially created special exceptions to the exhaustion requirement of the PLRA. 136 S. Ct. 1850, 1862 (2016)("Courts may not engraft an unwritten special circumstances exception onto the PLRA's exhaustion requirement.") (internal quotation marks omitted). The Court concluded that the PLRA includes a single "textual exception" – that an inmate must only exhaust remedies that are "available" to him or her. Id. at 1858. "But aside from that exception, the PLRA text suggests no limits on an inmate's

10

obligation to exhaust – irrespective of any 'special circumstances.'" Id. at 1856.

The Supreme Court described three situations in which official prison administrative remedies might be unavailable because the procedures could not be used by an inmate to obtain relief for the conduct or conditions complained about. See id. at 1859-60. First, an administrative remedy may be unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use" because an "ordinary prisoner can[not] discern or navigate it" or "make sense of what it demands." Id. (citations omitted). Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a) is an affirmative defense. See Jones v. Bock, 549 U.S. 199, 215 (2007). Thus, it is the defendants' burden to prove that an inmate did not exhaust his claim prior to filing the action in court. See Williams v. Priatno, 829 F.3d 118, 126 (2d Cir. 2016).

11

The defendants raised the defense of non-exhaustion in their answer to the amended complaint. See Defs.' Answer, ECF No. 26, at 6. On November 18, 2014, Osborn acknowledged receipt of the MacDougall Walker Correctional Institution Inmate Handbook. See Defs.' Mem., Ex. K, Attachment 1, ECF No. 43-13, at 7. Upon being transferred to Garner Correctional Institution on March 19, 2019 Osborn acknowledged receipt of the inmate handbook and a copy of Administrative Directive ("A.D.") 9.6. See id., Ex. J, Attachment 3, ECF No. 43-12, at 66.

For all matters relating to any aspect of a prisoner's confinement that is "subject to the Commissioner's authority" and "that are not specifically identified in Sections 4(B) through 4(I) of [A.D. 9.6(4)]," the applicable remedy is the Inmate Grievance Procedure set forth in 9.6(6)(A) – (N). See Defs.' Mem., Ex. J., Attachment 1, A.D. 9.6(4)(A), ECF No. 43-12, at 7.

A.D. 9.6(6) requires an inmate to first attempt to resolve the claim or issue informally before filing a grievance. Id. at 9.6(6)(A). He may attempt to verbally resolve the issue with an appropriate staff member or supervisor. Id. If attempts to resolve the matter orally are not effective, the inmate must also make a written attempt using the Inmate Request Form, CN 9601, and send that Form to the appropriate staff member. Id. If

12

the inmate does not receive a response to the written request within fifteen business days or the inmate is not satisfied with the response to his request, he may file a Level 1 Grievance using the Inmate Administrative Remedy Form, CN 9602. Id. at 9.6(6)(C).

The Level 1 Grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the Grievance and shall include a copy of the response to the Inmate Request Form or explain why the response is not attached. Id. The Unit Administrator shall respond in writing to the Level 1 Grievance within thirty business days of his or her receipt of the Grievance. Id. at 9.6(6)(I).

The inmate may appeal the Unit Administrator's disposition of the Grievance or the Unit Administrator's failure to dispose of the Grievance in a timely manner to Level 2. Id. at 9.6(6)(G), (I) and (K). The Level 2 Appeal of a disposition of a Level 1 Grievance must be filed within five calendar days from the inmate's receipt of the decision disposing of the Level 1 Grievance. Id. at 9.6(6)(K). A District Administrator is responsible for reviewing a Level 2 Appeal. Id. A response to the Level 2 Appeal must be issued within thirty business days of receipt of the Appeal. Id.

Osborn fell well short of complying with A.D. 9.6(6)(A) and

13

(C). He did not submit a copy of an Inmate Request Form with his Level 1 Grievance or explain why one was not attached. Also, drawing all inferences in his favor, the earliest date on which he made any effort to file a Level 1 Grievance was April 4, 2019, and the deadline for filing that Grievance was March 23, 2019. Moreover, Osborn did not file a Level 1 Grievance in the proper form until the grievance dated April 16, 2019 and noted as received on April 23, 2019.

Thus, Osborn did not completely exhaust his available remedies under A.D. 9.6 prior to filing this action as required by 42 U.S.C. § 1997e(a). See Calderon v. State of Connecticut Dept't of Corr., No. 304CV-1562 JCH HBF, 2006 WL 3085716, at *8 (D. Conn. Sept. 1, 2006)(dismissing claim where inmate had filed Level 1 grievance three days after the thirty-day time limit for doing so); Snyder v. Whittier, 428 Fed. App'x. 89, 91 (2d Cir. 2011)(quoting Woodford, 548 U.S. at 83-84)("An 'untimely or otherwise procedurally defective administrative grievance' . . . does not constitute proper exhaustion.")

In his complaint, Osborn states that "he has exhausted his administrative remedies on all issues contained in this complaint or that defendants have actively interfered with his just exhaustion thereof." Compl., ¶ 63. However, there are no facts asserted to support Osborn's statement that the defendants

14

actively interfered with his ability to exhaust his administrative remedies. Nor are there any facts suggesting that the administrative remedies were unavailable to Osborn.

Therefore, the defendants have met their burden of demonstrating that there is no genuine issue as to Osborn's failure to exhaust available administrative remedies prior to filing this action, and they are entitled to judgment as a matter of law.

## IV.    CONCLUSION

The Defendants' Motion for Summary Judgment (ECF No. 43) is hereby GRANTED. The Clerk is directed to enter judgment in favor of the defendants and close the case.

It is so ordered.

Signed this 25th day of August 2021, at Hartford, Connecticut

>                    /s/ AWT
>                Alvin W. Thompson
>           United States District Judge